United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Angelina Torrents, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-24760-Civ-Scola |
| | ) |
| Carnival Corporation, Defendant. | ) |

### Order on Summary Judgment

This action was previously before Senior United States District Judge King and United States District Judge Williams. Both have recused themselves. (ECF Nos. 63, 64.) It is now before me upon Defendant Carnival Corporation's ("Carnival") motion for summary judgment. (Mot., ECF No. 32.) For the reasons below, the Court **grants in part and denies in part** Carnival's motion. (**ECF No. 32**.) Before continuing, however, the Court needs to address a matter.

Mrs. Torrents's complaint is a shotgun pleading. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018). They violate Federal Rules of Civil Procedure 8(a)(2) and 10(b), "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (cleaned up). When presented with a shotgun pleading, a district court "should strike the pleading and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) ("This is so even when the other party does not move to strike the pleading.").

One type of shotgun pleading is a complaint that fails to "separate[] into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23, n.13 (11th Cir. 2015). That precisely describes Mrs. Torrents's complaint. None of her allegations are organized into individual counts, thereby leaving Carnival—and worse, this Court—to guess what her causes of action are.

In the interest of judicial economy, and sensitive to the fact that this case has been pending since 2019, the Court has chosen not to strike Mrs. Torrents's complaint and to proceed on Carnival's motion for summary judgment based on the Court's reading of Mrs. Torrents's complaint. However, in doing so, the Court does not mean to excuse bad behavior. Counsel for Mrs. Torrents is advised against filing shotgun complaints in the future. *See, e.g., Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012)

(Moore, J.) (dismissing maritime negligence claim that "epitomizes a form of 'shotgun' pleading," where the plaintiff alleged that Defendant owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which Defendant breached this duty"); *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *5-*6, n.2 (S.D. Fla. June 5, 2012) (Scola, J.) (ordering plaintiff to amend complaint to "separately allege an independent count" for various theories of liability that were lumped into a single maritime negligence claim).

1. **Background**

In January 2019, Plaintiff Angelina Torrents fractured her leg when she missed the last step of a staircase as she went to disembark the *Carnival Glory* in San Juan, Puerto Rico. At the time, Mrs. Torrents was 79 years old. The unfortunate occasion was not her first time disembarking the ship. Days prior, she successfully did so in Grand Turk—albeit without using the same stairway, identified as number 160.

In this suit, Mrs. Torrents claims that Carnival was negligent because (1) Carnival staff directed her to use stairway 160, (2) Carnival failed to properly maintain the staircase in safe conditions for passengers, and (3) Carnival failed to warn her of the staircase's dangerousness.[1] (Compl. ¶¶ 14, 25(f), 25(g)-(h), ECF No. 1.) According to Mrs. Torrents, stairway 160's design differs from that of other stairways in passenger areas and is thus unsafe for passengers to use. Indeed, she posits that stairway 160 was designed and intended to be used by crewmembers only. (*Id.* at ¶ 14; Opp. 2, ECF No. 39.) As evidence of that, Mrs. Torrents points to placards reading "Crew Only" and "Attention: Use Handrails While Descending" placed in stairway 160's vicinity. (*See* Opp. 5.) She also tenders an expert report that deems the stairs unsafe for passengers. (Robins Rep., ECF No. 31-1.)[2]

Carnival says there is no evidence that the stairway was designed for crewmembers only. (Mot. 9.) It argues that the stairs were not dangerous for passenger use, that Mrs. Torrents fails to establish that it had notice of them being dangerous, and that even if they were dangerous, the Plaintiff is barred from recovery because the stairs' purportedly dangerous condition was open and obvious. (*Id.* at 6-9.) Carnival also presents an expert report stating that

---

[1] Counsel for Mrs. Torrents has chosen not to present the Court with a clear listing of Mrs. Torrents's causes of action in the complaint. As such, the Court discerns these causes of action from its own reading of her complaint.
[2] Judge King previously denied Carnival's motion to exclude the opinion of Mrs. Torrents's expert. (*See* ECF No. 50.)

the stairs "comply with the requirements applicable" to the vessel and that they "provide a reasonably safe route." (S-E-A Rep. 5, ECF No. 33-3.)

## 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal citation omitted). "A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal citation and quotations omitted).

The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990); *see also Tippens v. Celotex Corp.*, 805 F.2d at 952 ("The District Court . . . can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.") (cleaned up).

At this juncture, the Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

## 3. Analysis

As noted, Mrs. Torrents advances three negligence theories in this case: (1) negligent mode of operation, (2) negligent maintenance, and (3) negligent failure to warn of a dangerous condition. For the reasons below, Mrs. Torrents's first two theories fail as a matter of law but her last survives.

Federal admiralty law governs this suit. *E.g., Caroll v. Carnival Corp.*, 955 F.3d 1260, 1263 (11th Cir. 2020). "To prevail on a negligence claim [in admiralty], a plaintiff must show that (1) the defendant had a duty to protect

the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (cleaned up).

### A. Negligent Mode of Operation

Although Mrs. Torrents seems to argue that she does not assert a negligent mode of operation claim (*see* Opp. 2), the Court finds that she does. A central part of her suit turns on Carnival's alleged decision to direct passengers toward stairway 160. In that respect, "[t]he dispositive issue is whether the specific method of [Carnival's] operation was negligent and whether the accident occurred as a result of that negligence," *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 259 (Fla. 2002) (cleaned up). This is the hallmark of a negligent mode of operation claim.

To be sure, "the basis for the negligent mode of operation theory is the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or unsafe condition." *Id.* at 260 (cleaned up). In other words, a negligent mode of operation claim "looks to a business's *choice of a particular mode of operation* and not events surrounding the plaintiff's accident." *Id.* (emphasis added).

Mrs. Torrents articulates this exact basis of liability in her complaint and in her briefing on summary judgment. (Compl. ¶ 14 ("Defendant, *CARNIVAL*, is negligent and failed to exercise reasonable care in the operation of the *CARNIVAL GLORY* when they regularly direct fare paying passengers to use the subject stairway."); (Opp. 4 ("CARNIVAL breached that duty by directing Mrs. Torrents to disembark via a steeper than usual stairway designed and intended solely for crew use.").)

Claims for negligent mode of operation are not recognized in federal admiralty law. *Malley v. Royal Caribbean Cruises, Ltd.*, 713 Fed. App'x 905, 910 (2017) ("No court has ever held that this claim exists in federal admiralty law."). As such, Mrs. Torrents's negligent mode of operation claim is not cognizable before this Court and fails.

### B. Negligent Maintenance

Mrs. Torrents also purports to assert a negligent maintenance theory tied to "passenger use." It again goes to Carnival's mode of operation. She says:

> "Plaintiff alleges that CARNIVAL failed to properly maintain the steep stairway *for passenger use*. The stairway may be compliant for the

purpose for which it was designed and intended – crew use. But it is not appropriately maintained, i.e., *used,* for passengers."

(Opp. 17 (emphasis added).) The Court fails to see how this "negligent maintenance" claim is any different from Mrs. Torrents's mode of operation claim. To be sure, the "dangerous condition" Mrs. Torrents claims to exist results when Carnival directs passengers to *use* stairway 160. In that sense, arguing that the staircase is not "appropriately maintained, i.e. *used*, for passengers" (Opp. 17 (emphasis added)) is effectively the same as asserting that Carnival was negligent when it "direct[ed] fare paying passengers to use the subject stairway[,]" (Compl. ¶ 14). Both theories stem from the same alleged tortious conduct—Carnival's directing passengers to use stairway 160. For the reasons discussed above, that claim is not cognizable.

But in construing the record in the light most favorable to Mrs. Torrents, the Court acknowledges that the complaint could be read to assert a negligent maintenance claim focusing strictly on the stairs' physical aspects. (*See* Compl. ¶¶ 18, 21, 22, 25(f).) Under this interpretation of her complaint, Mrs. Torrents's negligent maintenance claim would stem from Carnival's purported failure to *upkeep* stairway 160 in a proper state for passenger use. However, Mrs. Torrents does not point the Court in the direction of evidence to support that interpretation and the purported issues Mrs. Torrents cites with the stairs go to their design (e.g. their steepness and tread size)—not their upkeeping by Carnival. Meanwhile, Mrs. Torrents concedes that she is not pursuing a claim against Carnival based on the stairs' design. (Opp. 5; ECF No. 40 at ¶ 40.)

Thus, this second interpretation is not at issue. Mrs. Torrents's "negligent maintenance" (i.e. negligent use) claim fails as indistinct from her negligent mode of operation claim.

### C. Negligent Failure to Warn

Last, Mrs. Torrents asserts a claim based on Carnival's failure to warn her of stairway 160's purported dangerousness. (*See* Compl. ¶ 25(h).) This claim is derivative of Carnival's duty to protect its passengers from harms known to it. *See, e.g., Caroll*, 955 F.3d at 1263.

Carnival asserts two defenses to this claim: (1) that any risk of harm posed by stairway 160 was "open and obvious," and (2) that Mrs. Torrents fails to establish it was on notice of stairway 160's purported dangerousness.

### A. *Carnival's "Open and Obvious" Defense*

The "open and obvious nature of a dangerous condition negates liability for failure to warn." *Caroll*, 955 F.3d at 1267. For a purported danger to be

"open and obvious," the condition must be observable and appreciable by a reasonable person through use of their senses. *See Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. App'x 949, 952 (11th Cir. 2016).

Instructive here is *Frasca*, 654 Fed. App'x 949, a slip-and-fall case involving a slippery cruise deck. It was undisputed there that: "(1) the deck was well lit, (2) there was a heavy fog or mist in the air, (3) the deck was visibly wet and shiny, and (4) there were puddles of water on the deck's surface." *Id.* at 952 (cleaned up). The Eleventh Circuit concluded that under such circumstances "a reasonable person approaching the outer deck would have perceived the outdoor conditions through the ordinary use of his senses and would have concluded based on those conditions that the deck's surface would likely be slicker than usual." *Id.* (cleaned up). Despite that, it found that summary judgment was not appropriate because the plaintiff introduced an expert report opining that the deck was *unreasonably* slippery when wet such that "a reasonable person would have known that the deck would be slippery, but not as slippery as it actually was." *Id.* at 952-53.

Applying *Frasca*, the dispositive question here is whether the purported risk of danger posed by stairway 160 goes *beyond* that which a reasonable person would appreciate by use of their senses.

Genuine issues of material fact preclude the Court from answering that question. Mrs. Torrents proffered the expert testimony of Robin Roberts, a land-based architect and forensics investigator.[3] He opined that stairway 160 "did not meet the long-established codes for commercial staircases" and that it had "excessively high handrails . . . [which] prevented Mrs. Torrents from being able to catch her fall and prevent her injuries." (Robins Rep. 15.) Importantly, his report says that "[t]he stair risers were inconsistent and ranged from a low of 7.75" to a high of 8.25" . . . [and they] became higher as you neared the bottom of the staircase." (*Id.* at 4.)

Consistent with that, Mrs. Torrents alleged that the "condition of the subject stairway (including the landings), at all relevant times, [ ] violate[d]" applicable regulations and safety standards. (Compl. ¶ 19.) She also alleged that the stairway's handrails violated safety standards. (*Id.* at ¶ 21.)

A jury could well find that the degree of danger posed by the varying riser heights and allegedly defective handrails to be beyond that which a reasonable person could appreciate, and thereby conclude that the stairway's purported dangerousness was not open and obvious to Mrs. Torrents. *Cf. Hoover v. NCL*

---

[3] Carnival moved to exclude Mr. Roberts's opinion on the basis that he applied irrelevant standards, lacks maritime experience, and other factors. (*See, e.g.*, ECF No. 31 at 15.) Judge King denied that motion—albeit while expressing doubt as to the testimony's utility to a jury and vocalizing concern for its propensity to confuse jurors. (ECF No. 56 at 64.)

*(Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020) (Cooke, J.) (expert opinion that a stairway was unreasonably safe was sufficient to preserve matter past summary judgment). The Court acknowledges that Carnival offered the competing expert opinion of Bryan R. Emond, P.E., a mechanical engineer and marine consultant, which classified the stairs as being compliant "with the requirements applicable to th[e] vessel" and as "provid[ing] a reasonably safe route." (S-E-A Rep. 5.) However, it is not the role of the Court to weigh these experts' seemingly conflicting testimonies at this juncture.

Accordingly, the Court cannot presently resolve Carnival's "open and obvious" defense as a matter of law.

### B. *Carnival's Notice*

However, that does not dispose of Carnival's motion because "a cruise ship can only be liable for negligence if it had notice of the risk-creating condition." *Malley*, 713 Fed. App'x at 909; *see also Holland v. Carnival Corp.*, No. 20-21789-CIV, 2021 WL 86877, at *2 (S.D. Fla. Jan. 11, 2021) (Scola, J.); *Thomas v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1189, 1192 (S.D. Fla. 2016) (Williams, J.)).

"A defendant can be deemed to be on actual notice where the defendant knows of the risk creating condition and on constructive notice when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Holland*, 2021 WL 86877, at *2 (cleaned up).

### (1) *Other Incidents*

A plaintiff "can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Guevara*, 920 F.3d at 720.

To prove notice, Mrs. Torrents points the Court to another lawsuit involving a fall from an allegedly steep stairwell on another Carnival ship. (Opp. 10.) In that case, Mrs. Torrents says that two Carnival corporate representatives testified to yet another such incident that occurred in 2017. However, pointing to incidents that occurred on other ships, without more, does not provide sufficient evidence that a reasonable jury could use to find that the conditions across all incidents are "substantially similar," such that Carnival would be on notice of stairway 160's purported dangerousness.

To be sure, Carnival notes that the vessel involved in the separate lawsuit is of a different ship class. (ECF No. 43 at 5.) It underscores that there

is no evidence in the record that the stairways across the ships are "the same as the subject stairway [160] in terms of color, number of steps, riser heights, tread depth, slope, length and dimension of handrails, or even the location of the stairway in their respective ship's layout or configuration[.]" (*Id.* at 4.) Carnival further represents that the "appearance, perception, and dimensions of the stairways are entirely different and cannot be considered substantially similar." (*Id.* at 5.) Thus, Mrs. Torrents's reliance on the other incidents do not establish Carnival's notice of stairway 160's purported dangerousness.

### (2) *Carnival's Signage*

Yet, notice of a dangerous condition can also be established through warning signs. "A warning sign's primary function is to warn of dangers. Whether a cruise line places the warning sign itself or becomes aware of the warning sign after taking ownership is of little significance. Both situations allow for an inference that [the cruise line] had actual or constructive knowledge that the step down could be deceiving, and therefore dangerous, to cruise passengers." *Guevara*, 920 F.3d at 721-22.

Carnival seems to have placed—at least on other occasions—a sign that says "Attention: Use handrails while descending" in passengers' view on stairway 160. (*See* Torrents Depo. 91:20-92:13; Shukla Depo. 54:12-55:9, ECF No. 40-9.) During her deposition, Mrs. Torrents did not remember whether the sign was in place on the date of her accident, but she did not dispute that it was. (*Id.* at 92:12-13.) Quixotically, her position on the point seems to have changed. Mrs. Torrents now asserts there is "no direct evidence in the record that the sign was placed in position" during her incident. (Opp. 5.) To the extent she purports to rely on that assertion to advance the notion that Carnival failed to warn her (via the sign) of stairway 160's purported dangerousness, Mrs. Torrents confuses the evidentiary burden. She cannot prove that the sign was not in place by saying she does not recall if it was.

Regardless, the record contains testimony from one of the ship's security officers, Ajit Shukla, which suggests that Carnival had at minimum placed the sign above stairway 160 in the recent past. His testimony also suggests that the sign was above stairway 160 on the day of Mrs. Torrents's incident. (*See* Shukla Depo. 54:12-55:9.) The sign being placed above stairway 160—near or on the day of the incident—is important because Mr. Shukla also testified that other stairways did not have such signage above them:

> Q: Of course. But the passenger areas of the ship do not have signs that say in red, "Attention" and then in blue, "Use handrails while

>descending." There's no other passenger area of the ship that has that sign, is there?
>
>A: No, we don't place these signage [sic] in the guest area.

(Shukla Depo. 45:23-46:4.) To recall, Mrs. Torrents's central theory is that stairway 160 was designed to be for crewmembers only, not passengers. Further, in addition to the "[u]se handrails while descending" sign, one reading "Crew Only" would be visible in stairway 160's vicinity while the ship was in movement. (Shukla Depo. 13:6-24.)

Bound by the Eleventh Circuit's logic in *Guevara*, 920 F.3d 710, the Court finds that a jury could reasonably conclude from these facts that Carnival had notice of stairway 160's purported dangerousness. That is particularly true in light of the fact that stairways in other areas of the ship did not have such signage, and the expert proffered by Mrs. Torrents represented that a stairway in another part of the ship was less steep by approximately 11 degrees. (Robins Rep. 5, 6.) Indeed, a jury could reasonably connect the sign's directive to "[u]se the handrails while descending" to the stairs' steepness. *Cf Amy v. Carnival Corp.*, 961 F.3d 1303 (11th Cir. 2020).

In *Guevara*, the sign at issue read "ATTENTION! FOR YOUR OWN SAFETY PLEASE USE THE HANDRAIL. WATCH YOUR STEP." 920 F.3d at 715. There, the Plaintiff missed a step on a cruise ship and slipped on a sheen of water. The Eleventh Circuit held that a "reasonable jury could conclude that the warning sign's language applies to the step down, particularly where, as here, the warning sign immediately precedes the very step at issue and expressly warns passengers to 'watch your step.'" *Id.* at 722. This, according to that court, created a genuine issue of material fact concerning the cruise line's prior notice of the dangerous condition. *Id.* Although Carnival attempts to distinguish *Guevara* and a similar line of cases on the grounds that unlike in those cases, no corporate representative here testified that "the warning sign was intended to draw passengers' attention to the step down in the area at issue[,]" 920 F.3d at 722, that testimony is not necessary for a jury to make the above finding given this record.

Against this backdrop, the Court concludes that genuine issues of material fact concerning Carnival's notice of stairway 160's purported dangerousness preclude the Court from entering summary judgment on Mrs. Torrents's negligent failure to warn claim.

### C. Conclusion

For these reasons, the Court **grants in part and denies in part** Carnival's motion. (**ECF No. 39**.) Mrs. Torrents's claims for negligent mode of

operation and negligent maintenance fail. However, her claim for negligent failure to warn survives summary judgment.

The Court specifically preserves for trial Carnival's "open and obvious" defense and the question of whether it was on notice as to stairway 160's purported dangerousness—but only with respect to the signage posted in stairway 160's vicinity. Mrs. Torrents has failed to show as a matter of law that Carnival's notice can evidenced from the prior incidents she cites in her summary judgment briefing, and Carnival's purported notice on account of those incidents is not to be raised at trial.

**Done and ordered** at Miami, Florida on August 8, 2022.

_____
Robert N. Scola, Jr.
United States District Judge